IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSEPH DEAN et al., *Plaintiffs,* v. PHILADEPHIA GAS WORKS et al., *Defendants.* | CIVIL ACTION NO. 19-04266 |

PAPPERT, J.                                                                                              December 12, 2019

## MEMORANDUM

Joseph Dean sued Philadelphia Gas Works and several individual defendants alleging violations of Title VII of the Civil Rights Act of 1964, the Pennsylvania Human Relations Act, and 42 U.S.C. § 1983. His wife Patricia also brings a loss of consortium claim as a result of the alleged discrimination against her husband. PGW and two individuals, Craig White and Jerry Gaydosh, move to dismiss the PHRA claims without prejudice for failure to exhaust administrative remedies. They also move to dismiss the § 1983 and loss of consortium claims with prejudice for failing to state a claim.

I

Joseph Dean, a white man, was hired by PGW in December of 2017. (Compl. ¶ 20, ECF No. 1.) PGW is a corporation owned and operated by the City of Philadelphia. (*Id.* ¶ 6.) According to Dean, one of his co-workers, Dean Rutledge, frequently used racial slurs in referring to black employees and was known among his co-workers for doing so. (*Id.* ¶ 21.) Dean found the slurs to be harmful and offensive so he complained to his union representative, Joseph Cipparone. *See* (*id.* ¶ 22). When

1

Cipparone failed to respond, Dean complained to a black supervisor and only then did human resources begin to investigate. *See* (*id.* ¶¶ 24–25). Shortly thereafter, PGW terminated Rutledge. (*Id.* ¶ 26.)

After Rutledge was fired, Dean alleges that Cipparone and Michael Hudson, both white union representatives, retaliated against him and treated him with hostility. *See* (*id.* ¶¶ 9–10, 27). For example, Dean alleges that while at a cadet training class, Cipparone and Hudson publicly denounced him in front of other employees by calling him a "rat." (*Id.* ¶ 28.) Not long after this incident, Dean was called into a meeting with Cipparone, Hudson, and PGW's CEO Craig White, at which Dean alleges he was falsely accused of wrongdoing and called "a disgrace to the white race" by White. *See* (*id.* ¶¶ 29–31).

The next month, Dean filed a written complaint of discrimination with PGW. *See* (*id.* ¶ 32). He alleges that within one hour of filing it, PGW fired him. (*Id.* ¶ 33.) According to Dean, the harassment and retaliation continued even after his employment ended. *See* (*id.* ¶¶ 34–40). Beginning in December of 2018, unidentified PGW employees allegedly parked their PGW-marked vans in Dean's neighborhood for hours despite not having work scheduled in the area, and they would "pretend to shoot [Dean] with a 'finger gun.'" (*Id.* ¶ 35.) When Dean complained about the conduct to PGW through his attorney, it only worsened. (*Id.* ¶ 36.) Dean also alleges that Jerry Gaydosh, a white supervisor at PGW, has followed him from his home to his new job on multiple occasions. (*Id.* ¶¶ 11, 37.) And Hudson, one of the union representatives, has also allegedly harassed Dean many times by calling Dean to make threats against his life and by "leaving voice mails consisting of heavy breathing." (*Id.* ¶ 38.)

Dean filed his first charge of discrimination with the EEOC on February 21, 2019 alleging race discrimination and retaliation. (*Id*. ¶ 15.) He received his Notice of Right to Sue Letter on July 16, 2009. (*Id*. ¶ 15.) Dean filed a second charge of discrimination with the EEOC on June 28, 2019, (*id*. ¶ 17), and received his Notice of Right to Sue Letter with respect to that charge on October 30, 2019. (Defs.' Reply 2, ECF No. 9.)

II

To survive dismissal under Federal Rule of Civil Procedure 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pled "allow[ ] the court to draw the reasonable inference that [a] defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

When the complaint includes well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679). However, this "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). This plausibility determination is a

"context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Connelly*, 809 F.3d at 786–87).

III

A

Defendants initially moved to dismiss the Title VII claims in Counts I, II and III but withdrew their motion with respect to those counts in their Reply. (ECF No. 10.) Count IV of the Complaint alleges that PGW "failed to adequately train, supervise and instruct" the individual defendants who "subjected [him] to race discrimination and retaliation" in violation of his rights under the First and Fourteenth Amendments. (Compl. ¶ 55.) The Court interprets this allegation against PGW as a failure to train claim, which is analyzed under the standard for municipal liability set forth in *Monell*. *See Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Municipal liability under § 1983 exists when a constitutional injury results from a city's official policy or informal custom. *See Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (citing *Monnell*, 436 U.S. 658). Failure to train claims "are generally considered a subcategory of policy or practice liability." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *rev'd on other grounds by Taylor v. Barkes*, 135 S. Ct. 2042 (2015).

To sufficiently plead a § 1983 municipal liability claim for failure to train, the complaint must "demonstrate that a [municipality's] failure to train its employees 'reflects a deliberate or conscious choice.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 215 (3d Cir. 2001)). Deliberate indifference involves three components: "(1) the municipal

policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Doe v. Luzerne County*, 660 F.3d 169, 180 (3d Cir. 2011) (quoting *Carter v. City of Philadelphia*, 181 F.3d 339, 357 (3d Cir. 1999)).

Dean alleges that PGW "acted under color of law, and with deliberate indifference" to his "rights to be free from race discrimination." (Compl. ¶ 52.) He goes on to claim that PGW "failed to adequately train, supervise and instruct" its employees, such that they subjected him to "race discrimination and retaliation" in violation of his First and Fourteenth Amendment rights. *See* (Compl. ¶¶ 53, 53). These "bald assertion[s]" and legal conclusions, absent alleged facts to support them, are not entitled to the presumption of truth. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997)). The Court cannot, from the paucity of these allegations, reasonably infer that PGW failed to train, supervise and/or instruct its employees or that such a failure to do so amounted to a deliberate indifference. Accordingly, Count IV against PGW is dismissed.

The Court likewise dismisses the § 1983 claims against White and Gaydosh in their official capacities. When a suit is against a municipal employee in his official capacity, it "is, in all respects other than name, to be treated as a suit against the [municipal] entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *see also Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.*, 877 F.3d 136, 150 n.11 (3d Cir. 2017) (explaining that the same analysis for a claim of municipal liability "applies to the

individual officials, as sued in their official capacities"). Because the Court dismisses the municipal liability claim against PGW, it must also dismiss the official capacity suits.

B

The Court also construes Count IV to include § 1983 claims against White and Gaydosh in their individual capacities. More specifically, Dean alleges that various individuals retaliated against him for reporting incidents of race discrimination, thereby depriving him of his First and Fourteenth Amendment rights. *See* (Compl. ¶¶ 53, 55). To establish § 1983 liability against a defendant in his individual capacity, the "plaintiff must demonstrate a violation of a right secured by the Constitution and the laws of the United States [and] that the alleged deprivation was committed by a person acting under the color of state law." *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995) (quoting *Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir. 1993)). For public employees to state a First Amendment retaliation claim, the plaintiff must show that (1) his speech is protected by the First Amendment, (2) the speech was a substantial or motivating factor in the alleged retaliatory action, which if both are proved, shifts the burden to the employer to prove that (3) the same action would have been taken even if the speech had not occurred. *See Gorum v. Sessoms*, 561 F.3d 179, 184 (3d Cir. 2009).

Defendants in their motion do not contend that Dean's activities—that is, filing a complaint against co-worker Rutledge for his racial slurs and filing a Charge with the EEOC—fall outside the scope of activity protected by the First Amendment. Rather, they argue that White and Gaydosh's alleged retaliatory responses are insufficient to state a claim for relief. (Defs.' Mot. 9–10, ECF No. 6.)

1

The Third Circuit's standard for determining what constitutes a retaliatory action is whether the act is "sufficient to deter a person of ordinary firmness from exercising his First Amendment rights." *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006). When retaliatory actions are *de minimis*, they are insufficient to establish a constitutional violation. *Id.* (concluding that where a plaintiff "suffered no alteration in his employment benefits, pay, or job classification," the supervisor's critical comments did not amount to a constitutional violation). "Not every critical comment—or series of comments—made by an employer to an employee provides a basis for a colorable allegation that the employee has been deprived of his or her constitutional rights." *Id.*

The sole allegation against White is that when Dean was called to a meeting with White, Hudson and Cipparone, White told Dean that he was a "disgrace to the white race." (Compl. ¶¶ 29, 31.) Taken as true, this allegation, without more, is insufficient to give rise to a claim of retaliation. *See, e.g.*, *Brennan v. Norton,* 350 F.3d 399, 419 (3d Cir. 2003) ("[C]ourts have declined to find that an employer's actions have adversely affected an employee's exercise of his First Amendment rights where the employer's alleged retaliatory acts were criticism, false accusations, or verbal reprimands.").

Dean's allegation that he was fired within one hour of filing a written complaint of discrimination would be an adequate adverse action sufficient to support the retaliation claim. *See* (Compl. ¶¶ 32–33). Dean's Complaint, however, fails to attribute his firing to White or any defendant other than PGW itself.

With respect to the § 1983 First Amendment retaliation claim against Gaydosh in his individual capacity, Dean alleges that "[o]n many occasions, and as late as June 12, 2019," Gaydosh followed Dean "from his home to his new place of employment in Montgomery County for no other reason than to harass and intimidate." (Compl. ¶ 37.) Defendants contend that this alleged retaliatory action is a bald and inconclusive statement insufficient to state a plausible claim for relief. *See* (Defs.' Mot. 10).

Accepting his allegations as true, Dean's claim includes a specific date and the relevant locations where Gaydosh followed Dean. Moreover, a defendant's actions need not be physical in nature or constitute an adverse employment action to be considered a retaliatory act. *See e.g., Anderson v. Davila*, 125 F.3d 148 (3d Cir. 1997) (retaliatory action in the form of police surveillance); *see also O'Connor v. City of Newark*, 440 F.3d 125, 128 (3d Cir. 2006) (commenting that the "deterrence threshold" required for First Amendment retaliation claims is "very low"). At this stage, and accepting the facts as true, Dean has alleged enough to survive a motion to dismiss, but Gaydosh may renew his argument at summary judgment. The Court therefore grants Defendants' motion to dismiss Count IV against White in his individual capacity but denies the motion with respect to Gaydosh.

IV

Counts V and VI assert claims of racial discrimination and retaliation under the PHRA. Defendants argue that Dean's PHRA claims must be dismissed because he filed his Complaint less than one year after filing the charge of discrimination with the PHRC. *See* (Defs.' Mot. 5–6). Pennsylvania law requires plaintiffs to exhaust

administrative remedies under the PHRA before filing a civil action in court. 43 Pa. Con. Stat. § 962(c)(1); *Woodson v. Scott Paper Co.*, 109 F.3d 913, 925 (3d Cir. 1997). Under the PHRA, when a claimant files a discrimination claim with Pennsylvania Human Relations Commission, the PHRC has exclusive jurisdiction over the claim for one year; a complainant may not file a lawsuit during that period. 43 Pa. Con. Stat. § 962(c)(1). Unlike the process under Title VII, a notice of the right to sue is not required to bring a PHRA claim; rather, once the one-year period has expired, a complainant may file suit notwithstanding the fact that he has not received a letter from the PHRC. *Burgh v. Borough Council of Borough of Montrose*, 251 F.3d 465, 471 (3d Cir. 2001).

Dean has not yet exhausted his administrative remedies with respect to his claims. He filed his first charge of discrimination on February 21, 2019.[1] (Charge of Discrimination, Defs. Mot, Ex. A, ECF No. 6.) He filed this lawsuit on September 17, 2019. *See* (Compl.). Courts in the Third Circuit, however, take a flexible approach to PHRA exhaustion requirements, allowing plaintiffs to maintain PHRA claims if the period of exhaustion expires during the pendency of the litigation. *Eldridge v. Municipality of Norristown*, 828 F. Supp. 2d 746, 758 (E.D. Pa. 2011). District courts may therefore allow plaintiffs to amend their complaints after the mandatory one-year period has elapsed. *See, e.g.*, *Logan v. In-Ter-Space Servs., Inc.*, 2007 WL 2343868

---

[1] Because the EEOC and the PHRC have a "work-sharing agreement," Dean was excused from filing directly with the PHRC and the EEOC had the responsibility to transmit the complaint to the state agency. *Wardlaw v. City of Philadelphia*, 2011 WL 1044936, at *3 (E.D. Pa. Mar. 11, 2011). *See also DeAngelo v. DentalEZ, Inc.*, 738 F. Supp. 2d 572, 587–88 (E.D. Pa. 2010) (holding that plaintiff failed to exhaust administrative remedies under the PHRA where plaintiff dually filed EEOC and PHRC complaint, requested right to sue letter from EEOC, and filed suit in federal court prior to the one-year mark).

(E.D. Pa. Aug. 15, 2007). Counts V and VI are dismissed without prejudice to Dean's right to amend his complaint after February 21, 2020.

V

In Count VII, Patricia Dean asserts a loss of consortium claim as a result of the alleged discrimination against her husband. (Compl. ¶ 66.) Under Pennsylvania law, loss of consortium claims derive from the injured spouse's right to recover in tort law. *Little v. Jarvis*, 280 A.2d 617, 620 (Pa. Super. Ct. 1971). There is no right to recover for loss of consortium, however, based on civil rights claims under Title VII, the PHRA or § 1983. *See e.g.*, *Goldberg v. City of Philadelphia*, 1994 WL 313030, at *13 (E.D. Pa. June 29, 1994) ("Title VII does not provide for loss of consortium damages."); *McInerney v. Moyer Lumber & Hardware, Inc.*, 244 F. Supp. 2d 393, 402 (E.D. Pa. 2002) ("[T]here is no right to recover for loss of consortium in connection with a spouse's . . . PHRA claims."); *Williams v. City of Chester*, 2015 WL 224384, at *4 (E.D. Pa. Jan. 15, 2015) (holding where plaintiff brings a "derivative claim, alleging she suffered a loss of consortium because of violations of her husband's constitutional rights," "[s]uch a claim is not cognizable under § 1983"). Joseph Dean alleges violations under Title VII, the PHRA and § 1983; the Complaint includes no tort claims. Accordingly, Patricia Dean's claim—as it is based on her husband's civil rights claims—is dismissed with prejudice.

VI

Federal Rule of Civil Procedure 15(a)(2) states that the Court "should freely give leave [to amend] when justice so requires." "This certainly includes amendment to cure defective allegations." *Shifflett v. Korszniak*, 934 F.3d 356, 366 (3d Cir. 2019) (citing 6 Wright & Miller, Federal Practice and Procedure: Civil § 1474 (3d ed. 2019)). Dean is

10

free to amend Counts IV, V and VI consistent with this Memorandum and to the extent he can allege facts sufficient to state a plausible claim for relief.  Count VII is dismissed with prejudice.


BY THE COURT:


*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.